## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Corey Jawan Robinson, # 294233, | ) | C/A No. 5:12-cv-03358-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Albert Mack;  Dessirene Lloyd;  Loretta Aiken; | ) | |
| Assoc. Fred Thompson, Warden; Major Thierry | ) | |
| Nettles; Classification Ms. D. Bailey; Cpt. T. Clark; | ) | |
| Lolita M. Lee; Sherisse D. Birch; Warden Wayne | ) | |
| McCabe; Cpt. Ann Sheppard; Tanya F. McCants; | ) | |
| Cpt.William Brightharp;  Cpt. McBride | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"),
filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights.
This matter is before the court on cross motions for summary judgment.  Plaintiff filed a
Motion for Partial Summary Judgment on May 22, 2013.   ECF No. 70.  Defendants filed
oppositions to Plaintiff's summary judgment motion on June 10, 2013.  ECF Nos. 72, 73, 74.
On August 14, 2013, Defendant Aiken filed a Motion for Summary Judgment.  ECF No. 84.
That next day, on August 15, 2013, Defendant Lloyd filed a Motion for Summary Judgment,
and  Defendants  Albert  Mack,  Fred  Thompson,  Assoc.  Warden;  Major  Thierry  Nettles;
Classification Ms. D. Bailey; Cpt. T. Clark;  Lolita  M.  Lee;  Sherisse  D.  Birch;  Warden
Wayne McCabe; Cpt. Ann Sheppard; Tanya F. McCants; Cpt. William Brightharp; and Cpt.
McBride (hereinafter collectively "Lieber Defendants") filed a Motion to Dismiss, or in the
alternative, Motion for Summary Judgment.[1]   ECF Nos. 87, 88.  As Plaintiff is proceeding

---

[1] Because the Court has considered matters outside of the pleadings, the undersigned is
considering the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).

pro se, the court entered *Roseboro*[2] orders on August 15 and 16, 2013 advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF Nos. 85, 89.   Plaintiff filed oppositions to Defendants' summary judgment motions on September 3, 2013, ECF Nos. 98, 99, 100, and Defendant Aiken filed a reply to Plaintiff's responses on September 13, 2013, ECF No. 104.   This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.   Because the Motions for Summary Judgment are dispositive, a Report and Recommendation is entered for the court's review.

I.       Background

Plaintiff Corey Jawan Robinson is an inmate housed within Lieber Correctional Institution ("Lieber").  ECF No. 1. Plaintiff filed his Complaint on November 27, 2012 and alleges constitutional and other violations against Defendants for deliberate indifference, medical indifference, conspiracy, excessive force, violations of Eighth and Fourteenth amendment rights, retaliation, gross negligence, and malicious intent to harm.  ECF No. 1 at 3.   Specifically, Plaintiff contends that on December 16, 2010, his cellmate, Darnell Brown ("Brown") "filed requests forms and told Lt. D. Lloyd that he was having problems with me and that he was going to hurt me and that he need[ed] a cell change before blood spread." *Id.* at 4.    Plaintiff alleges that Defendant Lloyd told his cellmate, Brown, to "go ahead and let the blood spread." *Id.* Plaintiff avers that the next morning, December 17, Brown wrote a Request to Staff reiterating that he was going to hurt Plaintiff and Defendant Lloyd came to speak with Brown and responded in the same manner as she had on December 16.  *Id.*

---

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Plaintiff contends that he told Defendant Lloyd that he feared for his life.  *Id.* at 4. Plaintiff avers that on December 20, 2010, his cellmate went "on a homicidal watch saying he was going to stab [Plaintiff] to death."  *Id.*  Plaintiff alleges that his cellmate was stripped out and placed in a restraint chair.  *Id.*  Plaintiff contends that Brown spoke with Defendants Aiken, Lloyd, and Mack who did not place Brown in a different cell, but instead returned him to Plaintiff's cell.  *Id.*  Plaintiff avers that he spoke with Defendant Mack and asked him "why [was] he placing [Plaintiff's] life in danger when [his] roommate already was placed in a restraint chair for homicidal thoughts and threats toward Plaintiff."  *Id.* at 4-5.  Plaintiff contends that Mack told him it "was out of his hands" and he was told to place Brown back in Plaintiff's cell.  *Id.* at 5.  Plaintiff contends that he and Brown "got into a fight about 30 to 45 minutes later from a dispute."  *Id.*  Plaintiff alleges that Mack and his wing officer were "aware of the fight" and "covered up the incident."  *Id.*  Plaintiff avers that his roommate was "moved to a different cell" the next day.  *Id.*  Plaintiff contends that he had "knots on [his] face and busted lip" and was denied medical treatment for the injuries he received in the fight.  *Id.*  Plaintiff requests monetary compensation in the sum of $7,500, attorney fees, court costs, and injunctive relief. *Id.* at 7.

II.    Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *Weller v.*

*Dep't of Soc. Servs*., 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The movant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries its burden of showing there is an absence of evidence to support a claim, then the plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. 477 U.S. at 324-25. An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the plaintiff. *Anderson*, 477 U.S. at 248. Issues of fact are "material" only if establishment of such facts might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of the plaintiff's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23. Moreover, a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson*, 477 U.S. at 251.

III.    Analysis

Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983 alleging federal and state law claims against 14 Defendants. Plaintiff moves for partial summary judgment "as to the liability of defendants Albert Mack; Dessirene Lloyd; Loretta Aiken; Assoc. Warden Fred Thompson; Major Thierry Nettles; Lolita M. Lee; Sherisse D. Birch, and Tanya F. McCants for damages for conspiracy and deliberate indifference to plaintiff safety." ECF No. 70 at 1.

4

Defendant Aiken, Defendant Lloyd, and the Lieber Defendants have also filed summary judgment motions arguing that they are entitled to judgment as a matter of law as to all Plaintiff's claims.  Because Plaintiff's allegations vary as to the multiple Defendants, this Report discusses Plaintiff's and Defendants' motions as to each Defendant or group of Defendants as appropriate.

### A.     Defendants' Motions for Summary Judgment

### 1.     Failure to State a Claim

To state a claim against a defendant in their individual capacity, a plaintiff must affirmatively show that the defendant acted personally in the deprivation of the plaintiff's constitutional rights.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed.  *See Davis v. Villers,* C/A No. 5:12CV48, 2013 WL 459747 at *2 (N.D.W.Va. February 7, 2013).

Defendants Associate Warden Fred Thompson, Major Nettles, Ms. Bailey, Captain Clark, Lolita M. Lee, Sherisse Birch, Captain Sheppard, Tanya McCants, Captain Brightharp, Captain McBride argue that Plaintiff's Complaint should be dismissed against them because the Complaint fails to state any valid cause of action against them.  ECF No. 88 at 14.  These Defendants argue that Plaintiff's Complaint did not make any reference to actions on their part that would tend to support any allegation of wrongdoing against them and therefore they should be dismissed from this action.  *Id.*  In response, Plaintiff offers his own affidavit and contends that these Defendants were "personally involved in the events resulting in Plaintiff claims."  ECF No. 100 at 4.   Plaintiff attests that "most of the Defendants were aware that

Brown had threatened his life but they intentionally kept Brown in the same cell with [Plaintiff]." Plaintiff Aff. ¶ 1, ECF No. 100-1. Plaintiff contends that Defendant Nettles and Defendant Thompson authorized Brown to be placed in the restraint chair. *Id.* ¶¶ 2, 3. Plaintiff avers that Correctional Clinical Counselors ("CCC") Lolita M. Lee, Sherisse Birch, and Tanya McCants are responsible Defendants because Brown was cleared "medically to be placed in chair including mental health approval so therefore mental health was aware so it was up to one of the [CCC] to place [Brown] on crisis intervention status instead of the same cell with [Plaintiff] after taking out of restraint chair." *Id.* ¶ 3. Plaintiff contends that no one "bother[ed] to inform [Defendants Clark or Bailey] to make an immediate cell change." *Id.* ¶ 6. Plaintiff argues both Defendant Lloyd and Defendant Nettles "possessed ranks" to authorize Brown to be placed in a different cell. *Id.* Plaintiff also contends that SCDC documents show that Defendant Thompson "was aware of the incident December 20, 2010" and Thompson had the power to immediately change Brown's cell "due to the actual notice of the threat of violence." *Id.* ¶ 7.

In this case, Plaintiff provides no facts, either in his Complaint or in the evidence offered in support of his opposition to Defendants' motion for summary judgment, that Defendants Sheppard, Brightharp and McBride had any personal involvement in the events detailed in his Complaint. The undersigned further finds that Plaintiff's contentions that Defendants Lee, Birch, and McCants are liable to him because of their employment as CCC, and Plaintiff's statement that Defendants Clark and Bailey were not informed about Brown's homicidal threats and therefore could not make a cell change is also, without more, insufficient to show that these Defendants acted personally in the deprivation of Plaintiff's constitutional rights. Finally, the undersigned finds that Plaintiff's allegations against

Defendants Nettles and Thompson concerning their failure to place Inmate Brown in a different cell despite knowledge of Brown's alleged homicidal threats against Plaintiff are sufficient to only support personal involvement regarding Plaintiff's deliberate indifference claim.  Accordingly, it is recommended that Defendants Sheppard, Brightharp, McBride, Lee, Birch, McCants, Clark, and Bailey be dismissed from this action for failure to state a claim. It is further recommended that Defendants Thompson and Nettles be granted summary judgment on Plaintiff's medical indifference, conspiracy, excessive force, and Eighth and Fourteenth amendment claims for failure to state a claim.

### 2.    Lack of Personal Involvement

Defendant Aiken argues she is entitled to summary judgment as to Plaintiff's § 1983 claims because there is no evidence that she deprived Plaintiff "of any recognized constitutional right or that she had any intent to do so" and further contends that she cannot be liable for incidents in which she was not personally involved.  ECF No. 84-1 at 6-7.

In order to sustain a § 1983 claim, a plaintiff must prove that he or she was deprived of a constitutional right by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). It is well-settled that Plaintiff also must establish that each Defendant was personally involved in the deprivation of his constitutional rights in order to sustain a claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). However, the Fourth Circuit has found that 42 U.S.C. § 1983 "allows the imposition of liability upon actors more remote than those who actually inflict the ultimate constitutional injury, where their own conduct can be said to have played a significant role in causing that injury." *Cook v. James*, 100 Fed. Appx. 178, 180-81 (4th Cir. 2004).

Defendant Aiken attests that she provided counseling services to Plaintiff and Inmate Brown, but that she "did not meet with either [Plaintiff] or Inmate Brown on the dates contained in the allegations." Aiken Aff., ECF No. 84-3. Aiken further states that "it was never [her] responsibility to determine which room an inmate was assigned" and she "was not called to analyze or examine Inmate Brown or [Plaintiff] on December 20, 2010, or any other day in December, 2010." *Id.* Defendant Aiken offers the notes produced in her capacity as a Mental Health Counselor as additional evidence that she was not involved with Plaintiff or Inmate Brown on December 20, 2010. *See* ECF No. 84-6 at 1, 5, 15-25.

Plaintiff contends that Defendant Aiken is not entitled to summary judgment as she knew of, and disregarded, an excessive risk to his safety and offers his own affidavit in support of this contention. ECF No. 98 at 2. Plaintiff attests that Loretta Aiken, as a CCC, is responsible in this case as the record shows that mental health approval was given for Brown's placement in the restraint chair, and therefore "mental health was aware so it was up to one of correctional clinical counselor to place him on crisis intervention status instead of the same cell with [Plaintiff] after tooking [sic] out of restraint chair." Plaintiff Aff. ¶ 3, ECF No. 98-1. Plaintiff contends that Defendant Aiken was Brown's assigned counselor and spoke with Brown that day, but failed to document their interaction. *Id.* ¶ 11. Plaintiff also argues that as Brown's assigned counselor, Aiken was to "meet with inmate Brown every 30 days per policy," and that Aiken did not see Brown in December which was a violation of SCDC policy. *Id.* Plaintiff finally argues that Aiken has not offered any evidence that she was not at work on December 20, 2010 and "how else [he] would of know she was at work if [he] did not saw [sic] her that day." *Id.*

The undersigned finds that Plaintiff has offered insufficient evidence to establish Defendant Aiken's involvement in the allegations in his Complaint. SCDC records show that Defendant Aiken did not have any interactions with Plaintiff or Brown in December 2010, and Plaintiff's unsupported contention that Aiken must have been at work on December 20, 2010 because he saw her, without more, is insufficient to establish that Defendant Aiken was personally involved in the deprivation of his constitutional rights. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("unsubstantiated allegations and bald assertions" are insufficient to defeat summary judgment). The undersigned therefore recommends that this claim be dismissed and also recommends that Defendant Aiken be dismissed from this action.

### 3.    Deliberate Indifference to Risk of Harm

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Farmer*, 511 U.S. at 834. To make a valid claim under the Eighth Amendment based on prison officials' failure to protect him against assault, a prisoner must satisfy two elements: that he faced a substantial risk of serious harm and that officers acted with deliberate indifference to that risk. *Id.* As to the first prong, "[o]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). As to the second, the requisite state of mind is one of "deliberate indifference" to the inmate's health or safety. *Farmer*, 511 U.S. at 834. A prison official shows deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

>    a.    Defendants Associate Warden Fred Thompson, Major Nettles, and Sergeant Albert Mack[3]

Defendants contend that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because even when the facts are viewed in the light most favorable to Plaintiff, Plaintiff was never at risk for serious harm. ECF No. 88 at 6. Defendants argue that Plaintiff has not alleged any facts that show that Defendants Thompson and Nettles were "ever made aware of any threat to inmate Robinson's safety that they did not act upon, were involved in placing inmate Brown back into inmate Robinson's cell, or were otherwise involved in events of December 20th, 2010 following inmate Brown's removal from the restraint chair." *Id.* Defendants also argue there is no record of Plaintiff or Brown "being charged for fighting with one another [on December 20, 2010] or medical treatment being provided or otherwise requested by either inmate." *Id.* Defendants Thompson and Nettles contend that Plaintiff has not offered any evidence that that would support a claim that they were aware of an "ongoing risk of harm to him prior to the alleged altercation with inmate Brown." *Id.* at 7.

Defendants offers affidavits from Defendants Thompson and Nettles who attest that in November 2010 numerous inmates at Lieber had begun to abuse SCDC protocols that were initiated to ensure an inmate is not a threat to himself and others "in order to gain single cell status to the point it was creating significant security issues." Thompson Aff. ¶ 5, ECF

---

[3] All of the Lieber Defendants move for summary judgment on this claim, however, because the undersigned recommends that Defendants Bailey, Clark, Lee, Birch, McCabe, Sheppard, McCants, Captain Brightharp, and Captain McBride be dismissed from the action for failure to state a claim, the undersigned does not address the additional arguments they make in support of summary judgment.

No. 88-4; Nettles Aff. ¶ 5, ECF No. 88-5.  They aver that Plaintiff and Inmate Brown were two such inmates "who continuously manipulated the system to their advantage and put staff, themselves and other inmates at risk." *Id.* ¶ 8.   Thompson and Nettles aver that Inmate Brown's removal from his cell on December 20, 2010 was necessary "given his allegation and a proper step in ensuring the safety of [Plaintiff], Staff and Inmate Brown."  *Id.* ¶ 9. Thompson contends that Inmate Brown was evaluated after four hours in the restraint chair and, given the totality of the circumstances, Defendant Mack returned Brown "back into his cell with [Plaintiff] after confirming with both inmates that there was no actual intent to harm one another." *Id.* ¶ 12.  Thompson attests that he reviewed the recording of Brown's removal from the restraint chair and found over five minutes of recorded time where Plaintiff did not state to Defendant Mack that he was afraid of Brown being returned to their cell.  *Id.* ¶ 14. Thompson and Nettles contend that they were never informed of an altercation between Plaintiff and Brown.  Thompson Aff. ¶ 15; Nettles Aff. ¶ 15.

Defendant Mack contends that, even assuming Plaintiff's version of the facts are true, Plaintiff cannot meet the *Farmer* factors because the altercation between Plaintiff and Brown arose out of a "dispute" that occurred thirty minutes after inmate Brown returned to the cell and after Brown had stated, more than once, that he "was not a danger to himself or inmate Robinson."  ECF No. 88 at 8. Mack argues that when Brown stated later that day that "I am feeling homicidal" to Sergeant Guess, Brown was removed from his cell and evaluated, which contradicts Plaintiff's claims that Brown was moved from their cell the next day.  *Id.* Defendant Mack contends that Plaintiff's "allegations fail to support a claim of deliberate indifference but rather show inmate Robinson and inmate Brown were manipulating the system in an attempt to get what they wanted, a single man cell*."  Id.*

Defendant Mack offers his own affidavit and attests that Plaintiff and Inmate Brown "continuously manipulated the system" by claiming to be homicidal or "otherwise a danger to themselves" in an attempt to obtain a single cell. Mack Aff. ¶¶ 5, 6, 8, 9, ECF No. 88-2. Mack avers that he "was the sergeant in charge of SMU" and often encountered inmates claiming to be homicidal. *Id.* ¶ 9. Mack states that he worked the day shift on December 20, 2010, and was a member of the strike team that removed Inmate Brown from the restraint chair on December 20, 2010. *Id.* ¶ 11. Mack attests that it was clear from his interactions with Brown and Plaintiff on December 20, 2010 that "there was no animosity between inmates Brown and Inmate Robinson following inmate Brown's first removal from the restraint chair." *Id.* ¶ 12. Mack avers that

> [a]s the sergeant in charge, I relied upon my judgment, other officers and staff in evaluating inmate Brown after his initial four hours in the restraint chair as seen on the video when moving him back to his original cell as multiple cell movements were occurring and the SMU was running out of secure space creating a significant security risk to all officers, staff, and inmates.

*Id.* ¶ 13. Mack attests that

> [g]iven the totality of the circumstances . . . it was reasonable and well within both [his] and Sergeant Guess' discretion as SMU Sergeants to place inmate Brown back into his cell with inmate Robinson after confirming with both inmates that there was no actual intent to harm one another in the interest of the security and safety of all staff and inmates in SMU.

*Id.* ¶ 15. Mack avers that Brown stated that he had no problems with Plaintiff during his initial removal from the restraint chair, and reiterated that there were no problems after Brown was returned to their joint cell. *Id.* ¶ 16. Mack contends he went off shift once Brown was returned to his cell and he was not informed that Brown and Plaintiff were involved in an altercation on December 20, 2010. *Id.* ¶¶ 20-21.

In response to these arguments, Plaintiff argues that the record shows that these officials knew of and disregarded an excessive risk to his safety and cites to his own affidavit, ECF No. 100-1; SCDC Policy for Dealing with Homicidal Inmates in SMU, ECF No. 100-2 at 2; and a printout from SCDC Mental Health Services for Inmate Brown, ECF No. 100-2 at 3. Plaintiff's arguments opposing summary judgment also reference a DVD of Inmate Brown's disciplinary hearing where he was found guilty of threatening Plaintiff on December 20, 2010, a DVD of Inmate Brown's December 20, 2010 placement in the restraint chair, and the SCDC logbook for December 20, 2010. Plaintiff also offers affidavits on behalf of an unknown officer and DHO James Blackwell, both prepared, and signed by, Plaintiff. ECF Nos. 100-2, 100-3.

Plaintiff alleges that Defendants violated SCDC policy because Brown "was never moved and placed in a holding cell, he was not interviewed by a mental health staff accordance to defendants own admission to determine if he needed to be placed on crisis intervention." ECF No. 100 at 3; *see also* Plaintiff Aff. ¶ 5, ECF No. 100-1. Plaintiff contends that there are no medical records to support Defendants' claims that he was seen by SCDC medical staff on December 20 and 21, 2010, and did not report any injuries. ECF No. 100 at 4. Plaintiff argues that there was animosity between him and Brown and that "proper protocols" were not "initiated in order to ensure" Plaintiff's safety when Brown threatened to both harm himself and Plaintiff. *Id.* at 4. Plaintiff attests that Brown "was placed back into a cell with [Plaintiff] . . . where [he] had in mind [Brown] was going to attack [him] so after an disputed a fought broke out and [he and Brown] sustained injury." Plaintiff Aff. ¶ 5, ECF No. 100-1 at 3. Plaintiff cites to SCDC records and argues that Defendant Nettles "authorized inmate Brown to be placed in the restraint chair" and Defendant Mack was a

witness and also the supervisor placing Brown in the restraint chair "so all these high ranking officials was aware of the threat of violent with actual knowledge." *Id.* ¶ 6. Plaintiff argues that Defendant Nettles "possessed ranks" to authorize Brown to be placed in a different cell. *Id.* Plaintiff contends SCDC policy was violated because "if an inmate is known to be a physical threat to an inmate he is not to be housed in the cell with that same inmate." *Id.* Plaintiff also contends that SCDC documents show that Defendant Thompson "was aware of the incident December 20, 2010," and Thompson had the power to immediately change Brown's cell "due to the actual notice of the threat of violence." *Id.* ¶ 7. Plaintiff contends that a review of the DVD when Brown was placed in a restraint chair reveals that Defendant Mack did not state on the tape why Brown was being placed in the restraint chair which is a violation of SCDC policy and also shows that "Darnell Brown and defendant Mack made an agreement to put him back in the cell with Plaintiff" also violating SCDC policy and "further proves conspiracy to cause [Plaintiff] harm." *Id.* ¶ 9.

The undersigned has reviewed the evidence in the record, including the DVDs concerning Inmate Brown's Disciplinary Hearing and Brown's December 20, 2010 placement in the restraint chair, and finds that Plaintiff has failed to establish that he faced a substantial risk of serious harm and that officers acted with deliberate indifference to that risk. As an initial matter, there is no evidence in the record that Defendants Thompson or Nettles had any involvement with the decision to return Inmate Brown to Plaintiff's cell. The undersigned further finds that Plaintiff cannot show that Defendant Mack's decision to return Brown to Plaintiff's cell was made with deliberate indifference to Plaintiff's safety. The undisputed record shows that Brown was known to try to manipulate SCDC policies and procedures by claiming to be homicidal in order to be placed in a single cell. The evidence

in the record further shows that Brown indicated that he had no animosity towards Plaintiff prior to being returned to the parties' joint cell.   Additionally, Plaintiff has presented insufficient evidence to establish that Brown's return to their joint cell presented a substantial risk of serious harm to Plaintiff.   Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to offer any evidence that Brown was the aggressor in the alleged altercation between Brown and Plaintiff.   Plaintiff himself admits that there was mutual animosity between him and Brown and that he and Brown were involved in a dispute that resulted in a physical altercation where, according to Plaintiff, both parties suffered minor injuries.  Finally, Plaintiff's claims that Defendants failed to follow SCDC policies do not rise to the level of a constitutional violation. The "Constitution creates no entitlement to … any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations.  *See Riccio v. County of Fairfax, Virginia*, 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue).  Plaintiff has not offered sufficient evidence to show that Brown's return to the parties' cell amounted to a constitutional violation; the undersigned, therefore, recommends that Defendants Associate Warden Fred Thompson, Major Nettles and Sergeant Albert Mack  be granted summary judgment on this claim.

> b.      Defendant Dessirene Lloyd

Defendant Lloyd contends that Plaintiff cannot show that she was deliberately indifferent to a substantial risk of harm to Plaintiff as the evidence in the record shows that "she was not in the institution at the time that Plaintiff alleges he was injured in an altercation

with his cellmate and was not even informed of the alleged altercation." ECF No. 87-1 at 7; Lloyd Aff. ¶7-8, ECF No. 87-3. Lloyd further argues that that the SMU logbook on December 20, 2010, shows that Lloyd was informed that Plaintiff's cellmate, Brown, was having homicidal thoughts, that Brown was removed from the cell and placed in a holding cell, and was removed from the holding cell and placed in a restraint chair. ECF Nos. 87-5, 87-6; Lloyd Aff. ¶ 6. Lloyd contends there is no evidence that Plaintiff sustained any injury between the time "she was informed of a problem and the time that Plaintiff's cellmate was removed from the cell." ECF No. 87-1 at 8; Lloyd Aff. ¶ 9. Lloyd argues that the actions taken were "a reasonable response to an alleged risk of harm, even if it was not within [her] authority." ECF No. 87-1 at 8.

Plaintiff argues that Lloyd is not entitled to summary judgment on his deliberate indifference claim and offered his own affidavit in support alleging that the record before the court shows that Lloyd knew of, and disregarded, an excessive risk to Plaintiff's safety. ECF No. 99 at 3. Plaintiff alleges that Lloyd "submitted insufficient evidence of her own affidavit, and supporting exhibits, which contain inconsistencies, contradictions, [and] perjury." *Id.* at 4. Plaintiff argues SCDC's crisis intervention policy was violated when Brown was placed back in the cell with Plaintiff. *Id.* Plaintiff also contends that Lloyd contradicts herself in her affidavit when she attests that if she had been informed of Brown's homicidal thoughts she would have "discussed the matter fully with the officer(s) reporting the incident" while at the same time attesting that there was no evidence Plaintiff was injured between the time that Lloyd was informed of a potential threat and Brown was removed from the cell. *Id.* at 5.

The undersigned finds that the purported contradictions in Defendant Lloyd's affidavit do not create genuine issue of fact as to whether Lloyd was deliberately indifferent to Plaintiff's safety. The record establishes that Inmate Brown was removed from Plaintiff's

cell after Lloyd was informed that Brown was having homicidal thoughts and that Defendant Lloyd was not on duty, nor did she have any authority, to authorize Brown's return to Plaintiff's cell.  Further, Defendant Lloyd's failure to follow SCDC's policies or procedures, standing alone, do not amount to constitutional violations.  *See Riccio*, 907 F.2d at 1469 Therefore, the undersigned recommends that Defendant Lloyd be granted summary judgment on this claim.

4.    **Excessive Use of Force/Cruel and Unusual Punishment**

It is well settled that the "unnecessary and wanton infliction of pain" imposed "maliciously and sadistically" by prison officials "for the very purpose of causing harm" states a claim under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). However, it is also recognized that a prison's internal security is "peculiarly a matter normally left to the discretion of prison administrators" and they should be given "wide-ranging deference" regarding the actions necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22. In evaluating the use of force by prison officials, courts should consider the totality of circumstances, including such factors as the need for the application of force; the relationship between the need for force and the amount of force used; the extent of injury inflicted; the extent of threat to staff, inmates, or visitors; and any efforts to temper the use of force. *Id.* at 321. In the final analysis, an Eighth Amendment prisoner case involving the alleged excessive use of force by prison officials should not go to the jury "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Id.* at 322.

Defendants Lloyd and Mack argue that Plaintiff has failed to state any facts that would show that these Defendants used any force on Plaintiff or that Defendants used force maliciously and sadistically for the very purpose of causing harm. ECF No. 88 at 14; ECF No. 87-1 at 8.  Plaintiff acknowledges that that "issue of excessive force" may not be appropriately before the court, but asks that court to "consider the excessive force claim because an assault actually occurred between [Plaintiff] and his roommate, and the assault was carried out by defendants failure to follow proper procedure of policy . . . which show a purpose to cause harm." ECF No. 100 at 4.

The undersigned finds that Plaintiff has not offered any evidence to create a genuine issue of fact that Defendants used any force against Plaintiff or that the purported force was used "maliciously and sadistically for the very purpose of causing harm."  Accordingly, the undersigned recommends that Defendants Lloyd and Mack be granted summary judgment on this claim.

### 5.    Deliberate Indifference to Serious Medical Need

Deliberate indifference to a serious medical need requires proof that each Defendant knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 837.  In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986).   The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008).  A medical condition is also serious if a delay in treatment causes a lifelong

handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Plaintiff contends he was denied medical treatment after his roommate attacked him on December 20, 2010.  Plaintiff Aff. ¶ 1. Defendant Lloyd argues that she is entitled to summary judgment as Plaintiff has not offered any evidence that Defendant Lloyd was deliberately indifferent to Plaintiff's serious medical needs.  ECF No. 87-1 at 6-7. Plaintiff does not offer any opposition to these summary judgment arguments to show that Defendants were deliberately and intentionally indifferent to Plaintiff's medical needs of which they were aware at the time.  The undersigned, therefore, recommends summary judgment be granted on Plaintiff's medical indifference claim.

### 6.        Retaliation and Conspiracy

Defendant Lloyd contends that Plaintiff has not offered any evidence in support of his retaliation and conspiracy claims, and therefore she should be granted summary judgment on Plaintiff's retaliation and conspiracy claims as a matter of law.  ECF No. 87-1 at 8.

To establish a civil conspiracy under § 1983, "[Plaintiff] must present evidence that the [Defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [Plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).  As the Fourth Circuit stated in *Hinkle*, to survive a summary judgment motion, Plaintiff

> must [at least] come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective. In other words, [Plaintiff's] evidence must, at least, reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan.

81 F.3d 416, 421 (4th Cir. 1996) (internal citations omitted).

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams v. Rice*, 40 F.3d at 74.

Here, Plaintiff makes only conclusory allegations that he was being retaliated against, and has failed to set forth any evidence, other than his speculation, to establish that Defendants intentionally conspired to deny Plaintiff's constitutional rights. Accordingly, the undersigned recommends that summary judgment be granted on Plaintiff's conspiracy and retaliation claims.

### 7.     Qualified Immunity

Defendants assert they are entitled to qualified immunity from Plaintiff's lawsuit. ECF No. 84-1 at 11-12; ECF No. 87-1 at 9-11; ECF No. 88 at 5-8. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301. (4th Cir. 2004). "If the right was not clearly established in the specific context of the case - that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Defendants also performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

### B.      Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment against Defendants Albert Mack, Dessirene Lloyd, Loretta Aiken, Associate Warden Fred Thompson, Major Nettles, Ms.

Lolita M. Lee, Sherisse Birch, Captain Sheppard, and Tanya McCants "for damages for conspiracy and deliberate indifference to Plaintiff's safety." ECF No. 70 at 1. Plaintiff argues that these Defendants are not entitled to qualified immunity and that he has exhausted his administrative remedies as to these Defendants. *Id.* at 3-4. Plaintiff offers his own affidavit in support of his Motion for Partial Summary Judgment and attests that "most of the Defendants" were aware that his cellmate Darnell Brown had threatened Plaintiff's life on December 20, 2010, but these Defendants "kept Brown in the same cell with [Plaintiff]." Plaintiff Aff. ¶ 1. Plaintiff states he was denied medical treatment "in an effort to hide the incident." *Id.* Plaintiff contends that Brown was charged with threatening to inflict harm on Plaintiff, and was subsequently placed in a restraint chair. *Id.* ¶ 3. Plaintiff contends that SCDC records show different times for Brown's placement in, and removal from, the restraint chair which shows "contradiction and conspiracy.*" Id.* Plaintiff further attests that all CCC are responsible as Defendants in this case as they cleared Brown to be placed in the restraint chair and were therefore aware of Brown having homicidal thoughts against Plaintiff. *Id.* ¶ 4. Plaintiff states that Brown told an officer if he was placed back in the cell with Plaintiff that he would kill him, and that Brown was found guilty of threatening Plaintiff's life and was sanctioned. *Id.* ¶ 4.

The undersigned considered Plaintiff's summary judgment arguments when evaluating Defendants' motions for summary judgment, and having found that Defendants are entitled to summary judgment on Plaintiff's constitutional claims, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment be denied. The undersigned further recommends that the court decline to exercise supplemental jurisdiction

over any remaining claims for relief asserted pursuant to state law. *See* 28 U.S.C. § 1367(c)(3).

IV.    Conclusion and Recommendation[4]

Based on the foregoing, it is recommended that Plaintiff's Motion for Partial Summary Judgment, ECF No. 70, be denied, and that Defendant Aiken's Motion for Summary Judgment, ECF No. 84, Defendant Lloyd's Motion for Summary Judgment, ECF No. 87, and the Lieber Defendants' Motion for Summary Judgment, ECF No. 88, be granted and that this case be dismissed.

IT IS SO RECOMMENDED.

January 14, 2014                                        Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[4] Defendants assert Plaintiff's failure to exhaust his administrative remedies as an additional ground to support a grant of summary judgment. Defendants, however, did not submit sufficient documentation to support this argument. Therefore the undersigned does not address this ground in the Report and Recommendation. Lieber Defendants also move to dismiss Plaintiff's claims related to the grievance process at Lieber, however these claims were dismissed by Order of the Court dated March 6, 2013. ECF No. 28.