# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| Corey Jawan Robinson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:12-cv-03358-JMC |
| ) | |
| Albert Mack, Dessirene Lloyd, Loretta ) | **ORDER AND OPINION** |
| Aiken, Associate Warden Fred Thompson, ) | |
| Major Thierry Nettles, Classification Officer ) | |
| Ms. D. Bailey, Captain T. Clark, Lolita M. ) | |
| Lee, Sherisse D. Birch, Warden Wayne ) | |
| McCabe, Captain Ann Sheppard, Tanya F. ) | |
| McCants, Captain William Brightharp, IGC ) | |
| B.J. Thomas, Captain McBride, Ann ) | |
| Hallman, ) | |
| ) | |
| Defendants. ) | |
| ) | |

On November 27, 2012, *pro se* Plaintiff Corey Jawan Robinson ("Plaintiff") filed this 42 U.S.C. § 1983 action (ECF No. 1), alleging, along with another claim[1], that Defendants Albert Mack, Dessirene Lloyd, Loretta Aiken, Associate Warden Fred Thompson, Major Thierry Nettles, Classification Officer Ms. D. Bailey, Captain T. Clark, Lolita M. Lee, Sherisse D. Birch, Warden Wayne McCabe, Captain Ann Sheppard, Tanya F. McCants, Captain William Brightharp, and Captain McBride (collectively referred to as "the Summary Judgment Defendants") violated his constitutional rights and South Carolina law. *Id.* Specifically, Plaintiff claims Defendants failed to protect him from the alleged violent act of Plaintiff's cellmate, used

---

[1] On February 15, 2013, the magistrate judge issued a Report and Recommendation, which recommended that the court summarily dismiss Plaintiff's claim against Defendants IGC B.J. Thomas and Ann Hallman regarding the prison grievance process. (ECF No. 21). On March 6, 2013, the undersigned accepted the Report and dismissed Defendants IGC B.J. Thomas and Ann Hallman from this action without prejudice. (ECF No. 28).

1

excessive force, acted in retaliation, conspired against Plaintiff, and were deliberately indifferent to his medical needs. *Id.* at 3. Plaintiff also asserts claims of gross negligence and malicious intent to harm under state law. *Id.* Plaintiff has been granted leave to proceed *in forma pauperis* in this action. (ECF No. 20).

This matter is now before the court upon the magistrate judge's Report and Recommendation ("the Report"), filed January 14, 2014. (ECF No. 108). The Report recommended that the court deny Plaintiff's motion for partial summary judgment (ECF No. 70), and grant Defendant Aiken and Defendant Lloyd's motions for summary judgment (ECF Nos. 84, 87). The Report also recommended that the court grant summary judgment to Defendants Albert Mack, Associate Warden Fred Thompson, Major Thierry Nettles, Classification Officer Ms. D. Bailey, Captain T. Clark, Lolita M. Lee, Sherisse D. Birch, Warden Wayne McCabe, Captain Ann Sheppard, Tanya F. McCants, Captain William Brightharp, and Captain McBride (collectively referred to as "the Lieber Defendants"). (ECF No. 88).

For the reasons stated herein, the court **ACCEPTS** the magistrate judge's Report. The court thereby **DENIES** Plaintiff's motion for partial summary judgment, **GRANTS** Defendant Aiken, Defendant Lloyd, and the Lieber Defendants' motions for summary judgment, and **DISMISSES** Plaintiff's complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the factual and procedural summation in the magistrate judge's Report is accurate, and the court adopts this summary as its own. However, a recitation of the relevant facts, in a light most favorable to Plaintiff, and a brief outline of the procedural history is warranted.

Plaintiff is currently incarcerated at the Lieber Correctional Institution ("LCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). (ECF No. 1 at 3). During the incidents at issue in this action, Plaintiff was incarcerated in the Special Management Unit ("SMU") at LCI. (*See* ECF No. 88-6). LCI maintained a policy[2] by which a Correctional Clinical Counselor ("CCC") and a nurse would be notified when a prisoner made suicidal or homicidal threats. (ECF No. 98-1 at 3). The suicidal or homicidal prisoner would then be placed in a crisis intervention cell. *Id.* In November 2010, numerous LCI prisoners began to abuse the suicidal and homicidal protocols in an attempt to be placed in a single cell. (ECF No. 88-2 at 2). This situation created problems for the SMU prison staff because the SMU did not have enough cell space to accommodate the movement of all the prisoners who were asserting suicidal and homicidal feelings. *Id.*

Consequently, on November 18, 2010, Defendant Warden McCabe issued a memorandum entitled "Procedure for Dealing with 'Homicidal Inmates' in SMU". *Id.* at 6. The memorandum stated as follows:

> In order to effectively manage inmates in SMU who communicate (orally or in written form) to staff they are "homicidal" and to provide SMU staff appropriate time to safely move inmates[,] the procedures listed below will be followed:
> 
> I. The inmate will be removed from his cell and placed in a holding cell to be interviewed by medical staff and/or mental health staff.
> II. If medical/mental health officials determine that the inmate needs to be placed on Crisis Intervention (CI), security staff will ensure all provisions of SCDC Policy HS-19.01 "Placement of Inmates in Crisis Intervention Status" will be followed.
> III. If medical/mental health officials determine that the inmate <u>does not require</u> placement on C.I. the procedures listed below will be followed:

---

[2] This allegation by Plaintiff is unrebutted by the Summary Judgment Defendants.

3

                A. The shift supervisor will contact the Major or higher authority to request approval to place the inmate in the restraint chair.

                B. If approval is given, all provisions of SCDC Policy OP-22.01 "Use of Force and Restraints" will be followed.

    IV. Inmates communicating to staff that they feel homicidal will be charged with 809 "Threatening to Inflict Harm/Assaulting an Employee an Employee [sic] and/or Members of the Public or 824 "Threatening to Inflict Harm, Physical or Otherwise/Assault, on Another Inmate" as contained in SCDC policy OP-22.14 "Inmate Disciplinary System[.]"

*Id.*

    Plaintiff had a history of claiming to be suicidal and being placed in crisis intervention by the LCI medical staff. (*See, for example,* ECF No. 88-9 at 4–5). Several LCI officials have attested that Plaintiff and his cellmate Darnell Brown ("Cellmate Brown") continuously manipulated the procedure regarding homicidal and suicidal prisoners to their advantage. (ECF No. 88-2 at 2; ECF No. 88-3 at 2; ECF No. 88-4 at 2; ECF No. 88-5 at 2; ECF No. 88-7 at 2). On December 20, 2010, around 10:00 a.m., Cellmate Brown reported that he was feeling homicidal toward Plaintiff. (ECF No. 84-6 at 10–11; ECF No. 87-4 at 2; ECF No. 87-6 at 2). Cellmate Brown stated that if he was placed back in the cell with Plaintiff, he was going to kill Plaintiff and kill himself. (ECF No. 87-4 at 2). The incident report pertaining to this incident listed Defendant Mack as a witness. *Id.* Around 2:45 p.m., Defendant Mack assembled a Force Cell Movement Team ("FCMT"), which placed Cellmate Brown in a restraint chair as a response to his homicidal thoughts and was video recorded. (ECF No. 84-6 at 10; ECF No. 88-2; ECF No. 114). Defendant Nettles authorized the use of the restraint chair. (ECF No. 84-6 at 10). The LCI SMU logbook documented that Cellmate Brown was placed in "the chair per [Defendant] Lloyd". (ECF No. 88-2 at 14).

4

Around 6:45 p.m., Cellmate Brown was removed from the restraint chair by a FCMT assembled by Defendant Mack. (ECF No. 84-6 at 10, ECF No. 88-2; ECF No. 114). The removal of Cellmate Brown from the restraint chair and his return to his and Plaintiff's cell was video recorded. (*See* ECF No. 88-2; ECF No. 114). Upon the return of Cellmate Brown to his and Plaintiff's cell, Defendant Mack and Sergeant Guess, another member of the FCMT, found it to be clear that there was no animosity between the two prisoners. (ECF No. 88-2 at 3; ECF No. 88-3 at 3). These officials stood outside of Plaintiff's cell for five minutes and heard Cellmate Brown state that everything was good. (ECF No. 88-2 at 4; ECF No. 88-3 at 4). Plaintiff claims that once the video was no longer recording, he asked Defendant Mack, "[W]hy [are] they placing my life in danger when my roommate already was placed in a restraint chair for homicidal thoughts and threats toward me." (ECF No. 1 at 5). Plaintiff also asserts that Defendant Mack responded that "it was out of his hands" and that "the Warden, Major, Captains, [Defendant] Lloyd, and Classification placed [Cellmate Brown] in the restraint chair and informed [Defendant Mack] to place [Cellmate Brown] back in the cell with [Plaintiff]." *Id.*

Plaintiff states that about thirty to forty-five minutes after Cellmate Brown returned to the cell, the two prisoners got into a physical fight. (ECF No. 1 at 5). Plaintiff describes that he "had in mind [that Cellmate Brown] was going to attack [Plaintiff] so after [a] dispute[,] a f[i]ght broke out[.]" (ECF No. 98-1 at 3). Plaintiff alleges that his injuries from the fight were a busted lip and a knot on his face. (ECF No. 1 at 5). Plaintiff claims that Cellmate Brown was bleeding from the fight. *Id.* Cellmate Brown swears that he and Plaintiff never physically fought one another. (ECF No. 88-8).

At about 11:15 p.m. Sergeant Guess became aware that Cellmate Brown was again having homicidal thoughts toward Plaintiff. (ECF No. 84-6 at 13). Cellmate Brown was

5

subsequently moved to a holding cell. *Id.* Around 11:30 p.m., Defendant Thompson authorized Cellmate Brown to be placed once again in a restraint chair. *Id.* Sergeant Guess assembled the FCMT. *Id.* Cellmate Brown was placed in the restraint chair at about 3:15 a.m. on December 21, 2010, and removed from the restraint chair at about 7:30 a.m. (*Id.* at 13–14; ECF No. 88-2; ECF No. 114). This second placement and removal of Cellmate Brown to and from the restraint chair was also video recorded. (*See* ECF No. 88-2; ECF No. 114).

Sergeant Guess avers that Cellmate Brown was removed from Plaintiff's cell a second time because Cellmate Brown was once again homicidal. (ECF No. 88-3 at 4). However, Sergeant Guess asserts that Cellmate Brown did not fight or otherwise show violence towards Plaintiff. *Id.* The head nurse at LCI Luanne Mauney further declares that there was no report of any altercation between Plaintiff and Cellmate Brown on December 20th and 21st, 2010, nor were injuries reported by Plaintiff on those dates, despite Plaintiff being seen by the medical staff on those dates. (ECF No. 88-9 at 2). Nurse Jennifer Scott was a member of the FCMT that moved Cellmate Brown out of the restraint chair following his second restraint period. (ECF No. 88-10 at 2). Nurse Scott attests that around 7:30 a.m. on December 21, 2010, Cellmate Brown did not have any injuries that would indicate he had been in a physical altercation. *Id.* Nurse Denise Argentino similarly states that following Cellmate Brown's second period of restraint, she did not observe any injuries or indications that Cellmate Brown had engaged in a fight. (ECF No. 88-11 at 2).

Cellmate Brown was charged with threatening to inflict harm on a prisoner and was found guilty of that charge at an SCDC disciplinary hearing. (ECF No. 113; *see also* SCDC, Incarcerated Inmate Search (last visited Mar. 7, 2014), http://public.doc.state.sc.us/scdc-public/ (enter "00334139" for "SCDC ID" and select "submit"; then select "Brown, Darnell", at 3)).

**Procedural Background**

Plaintiff filed his complaint on November 27, 2012, alleging that the Summary Judgment Defendants failed to protect him from the violent act of his cellmate, utilized excessive force, retaliated and conspired against him, and were indifferent to his medical needs in violation of Plaintiff's constitutional rights. (ECF No. 1 at 3). Plaintiff further claimed that the Summary Judgment Defendants exhibited gross negligence and malicious intent to harm under South Carolina law. *Id.* On May 22, 2013, Plaintiff moved for partial summary judgment (ECF No. 70) to which the Summary Judgment Defendants filed responses in opposition (ECF Nos. 72, 73, 74). On August 14, 2013, Defendant Aiken moved for summary judgment (ECF No. 84). On August 15, 2013, Defendant Lloyd moved to dismiss, or in the alternative, for summary judgment. (ECF No. 87). On that same day, the Lieber Defendants moved to dismiss, or in the alternative, for summary judgment. (ECF No. 88). On September 3, 2013, Plaintiff filed responses in opposition to the Summary Judgment Defendants motions. (ECF Nos. 98, 99, 100). On January 14, 2014, the magistrate judge issued the Report recommending that the court deny Plaintiff's motion for partial summary judgment and grant summary judgment to the Summary Judgment Defendants. (ECF No. 108). Plaintiff filed Objections to the Report on January 23, 2014. (ECF No. 110).

**STANDARD OF REVIEW**

The magistrate judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those

portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the magistrate judge's Report, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir. 1983).

## **Motion to Dismiss**

For a complaint to survive a motion to dismiss, the Federal Rules of Civil Procedure require that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability…stops short of the line between possibility and plausibility of

'entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Additionally, the court may consider documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679.

**<u>Summary Judgment</u>**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999).

Given that on a motion to dismiss, the facts alleged in the complaint are liberally construed in the Plaintiff's favor, and since *pro se* complaints are afforded liberal construction, the court will assume without deciding that Plaintiff has stated claims against all Defendants sufficient for the court to address the merits of this action. Therefore, the court will consider the parties' motions as motions for summary judgment. The court construes Plaintiff's objections to

primarily address his § 1983 failure to protect claim, and therefore, the court has conducted a *de novo* review for that claim. The court also briefly addresses Plaintiff's remaining objections which pertain to Plaintiff's § 1983 claims of excessive force, deliberate indifference to medical needs, retaliation, and conspiracy.[3]

**Failure to Protect**

The magistrate judge set forth the legal standard for a failure to protect claim and the court incorporates that analysis herein without recitation. (*See* ECF No. 108 at 9–10). To establish a failure to protect claim, Plaintiff is required to show (1) that there was a serious or significant physical or emotional injury and (2) that the Summary Judgment Defendants were deliberately indifferent to Plaintiff's safety. *Bacchus v. Scarborough*, 466 F. App'x 269, 271 (4th Cir. 2012). To establish liability for prison supervisors, Plaintiff must demonstrate that the supervisors were aware of a pervasive and unreasonable risk of harm and that they acted obdurately or wantonly with respect to those conditions. *Moore v. Winebrenner*, 927 F.2d 1312, 1315–1316 (4th Cir. 1991).

The court finds that the record in this case obliterates any genuine issue at every prong of the failure to protect analysis. As an initial matter, Plaintiff has not sufficiently shown he was seriously or significantly injured. Plaintiff has alleged that he was physically attacked by Cellmate Brown; however, this allegation has been overwhelmingly rebutted by evidence set forth by the Summary Judgment Defendants. Cellmate Brown, himself, along with Sergeant Guess and LCI Nurse Mauney all testify that to their knowledge, the fight did not occur. Plaintiff has stated that both he and Cellmate Brown were injured from the fight and that Cellmate Brown was bleeding afterwards. However, two LCI nurses who evaluated Cellmate

---

[3] Plaintiff does not specifically object to the Report's recommendation that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (*See* ECF No. 108 at 22–23). Accordingly, the court accepts this recommendation without explanation.

Brown after he was placed in the restraint chair following the alleged altercation state that Cellmate Brown had no injury that would suggest he had been involved in a fight. Furthermore, while Plaintiff was seen by medical staff on December 20th and 21st, 2010, the records made no mention of an altercation between Plaintiff and Cellmate Brown or of any injuries on Plaintiff.

Additionally, Plaintiff himself acknowledges the insignificance of his purported injuries. In his objections Plaintiff states:

> [P]laintiff believe[s] the injury was not great for an [sic] doctor['s] attention but did required [sic] bandage and or ice, it was only tiny spec[k]s of blood[,] nothing to really make a big scene to see a doctor but the *little* injuries would not have occurred if policy was followed[.]

(ECF No. 110 at 12) (emphasis added). Therefore, the court finds that Plaintiff has not established the injury prong of his failure to protect claim.

Plaintiff has also failed to demonstrate deliberate indifference on the part of the prison officials. Deliberate indifference is defined as the knowing disregard of an objectively serious harm. *Bacchus*, 466 F. App'x 269, 271 (4th Cir. 2012). The record indicates that once prison officials were aware of Cellmate Brown's homicidal ideations, he was removed from Plaintiff's cell in accordance with the policy announced in Defendant Warden McCabe's November 18, 2010 memorandum. Although the decision was apparently made to not place Cellmate Brown in crisis intervention following his first removal from Plaintiff's cell, Defendant Mack received authorization from Defendant Nettles to place Cellmate Brown in the restraint chair.

Upon retrieving Cellmate Brown from the restraint chair, it appeared to both Defendant Mack and Sergeant Guess after standing outside of Plaintiff's cell for five minutes that the two prisoners were able to get along. Plaintiff makes the uncorroborated claim that he expressed fear to Defendant Mack once the cameras were turned off. Notwithstanding this allegation, the court finds that Plaintiff fails to demonstrate that he faced an objectively serious harm given Cellmate

Brown's statement and behavior indicating the issues had been resolved. Once Sergeant Guess determined that a conflict had resurfaced between Plaintiff and Cellmate Brown, Sergeant Guess obtained approval from Defendant Thompson to place Cellmate Brown in the restraint chair once again. As a matter of law, the LCI officials' response to Cellmate Brown's threats against Plaintiff's safety do not constitute deliberate indifference.

Lastly, Plaintiff has not alleged any facts to suggest he faced a pervasive risk of harm or that prison supervisors were aware of such a risk of harm. To the contrary, the record establishes that in the final months of 2010, LCI officials encountered a situation in which prisoners abused the cell placement system by purporting to be suicidal and homicidal in order to be moved to another cell. In spite of this, the prison staff and supervisors took Cellmate Brown's threats seriously and approved his movement from Plaintiff's cell and authorized the use of the restraint chair against Cellmate Brown twice in less than a twenty-four hour period. For these reasons, the Summary Judgment Defendants are entitled to summary judgment for this claim.

**Plaintiff's Remaining § 1983 Claims**

To state a claim of excessive force under the Eighth Amendment, Plaintiff must show that *prison officials* maliciously and sadistically used force against him to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As Plaintiff has not alleged or set forth any facts that a prison official utilized force against him, his excessive force claim fails as a matter of law. Plaintiff's objection that the prison officials' return of Cellmate Brown to Plaintiff's cell constitutes excessive force, (ECF No. 110 at 11), is frivolous.

To establish a claim of deliberate indifference under the Eighth Amendment, Plaintiff must show that Defendants committed acts or omissions sufficiently harmful to demonstrate deliberate indifference for Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106

(1976). Specifically, Plaintiff must satisfy two elements: (1) that he suffered an objectively serious deprivation or injury and (2) that the prison officials were deliberately indifferent to Plaintiff's needs. *Adams v. Sw. Virginia Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013). Plaintiff acknowledges in his objections that his purported injuries were small enough not to warrant a doctor's attention and at most required a bandage or ice. (ECF No. 110 at 12). Moreover, Plaintiff does not set forth facts to establish that he even sought out medical attention for his alleged minor injuries. For these reasons, the court agrees with the magistrate judge that Defendants are entitled to summary judgment for this claim.

Plaintiff does not specifically object to the magistrate judge's findings for his retaliation and conspiracy claims. (*See id.* at 12). Instead Plaintiff requests that the court make a *de novo* review and ensure that there are no clear errors on the face of the Report with respect to these claims. *Id.* Given the absence of a specific objection for these claims, the court declines to make a de no review. However, in accepting the recommendation of the magistrate judge to grant summary judgment for these claims, the court has satisfied itself that there is no clear error on the face of the record. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## CONCLUSION

Based on the aforementioned reasons and after a thorough review of the Report and the record in this case, the court **ACCEPTS** the magistrate judge's Report and Recommendation (ECF No. 108). The court thereby **DENIES** Plaintiff's motion for partial summary judgment (ECF No. 70), and **GRANTS** Defendant Aiken, Defendant Lloyd, and the Lieber Defendants' motions for summary judgment (ECF Nos. 84, 87, 88). Plaintiff's action is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 7, 2014
Greenville, South Carolina

15